## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT FREEDMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 11-686-LPS-SRF |
| | ) |
| JAMES J. MULVA, KENNETH M. | ) |
| DUBERSTEIN, RUTH R. HARKIN, | ) |
| HAROLD W. MCGRAW, III, ROBERT A. | ) |
| NIBLOCK, HARALD J. NORVIK, | ) |
| WILLIAM K. REILLY, VICTORIA J. | ) |
| TSCHINKEL, KATHRYN C. TURNER, | ) |
| WILLIAM E. WADE, JR., RICHARD L. | ) |
| ARMITAGE, RICHARD H. | ) |
| AUCHINLECK, AND JAMES E. | ) |
| COPELAND, JR., WILLIE C.W. CHIANG, | ) |
| GREG C. GARLAND, ALAN J. | ) |
| HIRSCHBERG, RYAN M. LANCE, and | ) |
| CONOCOPHILLIPS, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this shareholder derivative action brought under Section

14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a) *et seq.*, is

a motion to dismiss the verified complaint under Federal Rules of Civil Procedure 23.1 and

12(b)(6), filed on September 15, 2011 by defendants James J. Mulva ("Mulva"), Kenneth M.

Duberstein, Ruth R. Harkin, Harold W. McGraw, III, Robert A. Niblock, Harald J. Norvik,

William K. Reilly, Victoria J. Tschinkel, Kathryn C. Turner, William E. Wade, Jr., Richard L.

Armitage, Richard H. Auchinleck, James E. Copeland, Jr., Willie C.W. Chiang, Greg C. Garland,

Alan J. Hirschberg, and Ryan M. Lance (collectively, the "Individual Defendants"), and

ConocoPhillips (together with the Individual Defendants, the "Defendants"). (D.I. 42) For the following reasons, I recommend that the court grant the motion to dismiss.

## II.     BACKGROUND

Defendant ConocoPhillips is an integrated international energy corporation organized under Delaware law. (D.I. 1 at ¶ 5) ConocoPhillips is a publicly traded corporation pursuant to IRC § 162(m)(2). (*Id.*)

Defendants Mulva, Kenneth M. Duberstein, Ruth R. Harkin, Harold McGraw, III, Robert A. Niblock, Harald J. Norvik, William K. Reilly, Victoria J. Tschinkel, Kathryn C. Turner, William E. Wade, Jr., Richard L. Armitage, Richard H. Auchinleck, and James E. Copeland, Jr. (collectively, the "Directors") are members of ConocoPhillips' board of directors (the "Board"). (*Id.* at ¶ 7) Defendants Mulva, Willie C.W. Chiang, Greg C. Garland, Alan J. Hirschberg, and Ryan M. Lance (collectively, the "Executives") are ConocoPhillips' covered employees as defined in Internal Revenue Code § 162(m)(3) and Treas. Reg. § 1.162.27(c)(2), and are officers of the company pursuant to 10 *Del. C.* § 3114(b). (*Id.* at ¶ 8)

Plaintiff Robert Freedman ("Freedman") has been a continuous stockholder of ConocoPhillips since December 22, 2010. (*Id.* at ¶ 6)

On March 31, 2011, the Individual Defendants mailed a proxy statement to ConocoPhillips' shareholders in preparation for the annual meeting held on May 11, 2011 (the "Proxy Statement"). (*Id.* at ¶ 10) The Proxy Statement explained that shareholder approval of ConocoPhillips' 2011 Omnibus Stock and Performance Incentive Plan (the "2011 Plan") was necessary to comply with Section 162(m) of the Internal Revenue Code to qualify for tax deductions for performance-based compensation awards to executives. (*Id.* at ¶ 11) The Plan

2

provided incentive compensation to both the Directors and the Executives, setting maximum individual limits for each Executive of approximately $400 million per year in stock and cash. (*Id.*)  Directors were eligible to receive stock awards under the 2011 Plan, but not cash awards. (*Id.*)

The compensation program for the Executives, which was established by the Human Resources and Compensation Committee (the "Compensation Committee"), consists of four parts: (1) salary, (2) a cash incentive based on a one-year period, (3) a performance share award based on a three-year period, and (4) stock options or stock appreciation rights ("SARs"). (*Id.* at ¶ 20)  In establishing performance goals, the Compensation Committee determines the number of shares an Executive will receive if a goal is met. (*Id.* at ¶ 23)  The 2011 Plan sets forth the following performance goals:

> Increased revenue; Net income measures (including but not limited to income after capital costs and income before or after taxes); Stock price measures (including but not limited to growth measures and total shareholder return); Market share; Earnings per share (actual or targeted growth); Earnings before interest, taxes, depreciation, and amortization ("EBITDA"); Economic value added ("EVA®"); Cash flow measures (including but not limited to net cash flow and net cash flow before financing activities); Return measures (including but not limited to return on equity, return on average assets, return on capital, risk-adjusted return on capital, return on investors' capital, and return on average equity); Operating measures (including operating income, funds from operations, cash from operations, after-tax operating income, sales volumes, production volumes, and production efficiency); Expense measures (including but not limited to finding and development costs, overhead cost, and general and administrative expense); Margins; Shareholder value; Total shareholder return; Reserve addition; Proceeds from dispositions; Production volumes; Refinery runs; Reserve replacement ratio; Refinery utilizations; Total market value; and corporate value measures which may be objectively determined (including ethics compliance, environmental, and safety).

(D.I. 43, Ex. A at A-8)  The cash incentive, performance share award, stock options, and SARs

qualify as performance-based compensation if they meet the statutory and regulatory requirements.  (D.I. 1 at ¶¶ 21-23)

## III.    LEGAL STANDARD[1]

Pursuant to Federal Rule of Civil Procedure 23.1, a shareholder plaintiff who sues the board of directors on behalf of the corporation must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors . . . and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3); *see also Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007).  However, Rule 23.1 only addresses the adequacy of the plaintiff's pleadings.  "The substantive requirements of demand are a matter of state law." *Blasband v. Rales*, 971 F.2d 1034, 1047 (3d Cir. 1992); *see also King v. Baldino*, 409 F. App'x 535, 537 (3d Cir. 2010).

Under Delaware law, "the entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine's applicability." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (overruled on other grounds).  In determining whether demand would have been futile,

> [t]he trial court is confronted with two related but distinct questions: (1) whether threshold presumptions of director disinterest or independence are rebutted by well-pleaded facts; and, if not, (2) whether the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment.

---

[1]The complaint in the present action sets forth only derivative causes of action.  Because Freedman has failed to sufficiently plead demand futility for the reasons set forth at § IV, *infra*, the court need not reach the Rule 12(b)(6) analysis. *See Abrams v. Wainscott*, C.A. No. 11-297-RGA, 2012 WL 3614638, at *4 (D. Del. Aug. 21, 2012) (concluding that, "[b]ecause Plaintiff has not demonstrated demand futility, the Court need not reach Defendants' other arguments about . . . failure to state a claim under Rule 12(b)(6).").

*Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991) (overruled on other grounds). If either of these two inquiries is met, demand is excused. *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 820 (Del. Ch. 2005).

## IV. DISCUSSION

### A. Director Disinterestedness

"[D]irectorial interest exists whenever divided loyalties are present, or where the director stands to receive a personal financial benefit from the transaction not equally shared by the shareholders." *Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir. 1992). To find that demand is futile due to director interest or a lack of independence, a majority of the board of directors, or one-half of an evenly-numbered board, must be interested or lack independence. *Beam v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004). "Disinterested 'means that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally.'" *In re Dow Chem. Co. Deriv. Litig.*, C.A. No. 4349-CC, 2010 WL 66769, at *7 (Del. Ch. Jan. 11, 2010) (quoting *Aronson*, 473 A.2d at 812). However, a director is not financially interested solely because he receives customary compensation for his board service. *Seinfeld v. Slager*, 2012 WL 2501105, at *2 (Del. Ch. June 29, 2012). "Generally, the interest at issue must be material to the director, and materiality is assessed based upon the individual director's economic circumstances." *Freedman v. Adams*, C.A. No. 4199-VCN, 2012 WL 1099893, at *6 (Del. Ch. Mar. 30, 2012), *aff'd*, 58 A.3d 414 (Del. 2013).

In support of their motion to dismiss, Defendants contend that a majority of the Directors are disinterested and independent because they received no personal financial benefit from the

5

challenged transaction. Specifically, Defendants indicate that the compensation of twelve of the thirteen Directors under the 2011 Plan is not subject to the requirements of Section 162(m), which applies only to employees. (D.I. 43 at 6-7) In response, Freedman contends that every Director is interested in the transaction because each Director is eligible to participate in the 2011 Plan. According to Freedman, the Directors may be interested in compensation awards under the 2011 Plan even though the requirements of Section 162(m) do not apply to Director compensation. (D.I. 46 at 5)

The Court of Chancery confronted similar circumstances in *Seinfeld v. Slager*, 2012 WL 2501105 (Del. Ch. June 29, 2012). In *Slager*, the plaintiff alleged that the directors were interested in compensation awarded to employees pursuant to a Stock Plan because the directors were also eligible to participate in the Stock Plan. *Id.* at *10-14. The Court of Chancery determined that the directors were interested in the Stock Plan to the extent that they awarded themselves time-vesting restricted stock units because the Stock Plan placed "few, if any, bounds on the Board's ability to set its own stock awards." *Id.* at *11. However, the Court of Chancery treated awards of time-vesting stock units to employees under the Stock Plan as a separate transaction in which the directors had no interest. *Id.* at *14. Specifically, the Court of Chancery determined that,

> [i]n regard to awards to the employees, the Plaintiff is not challenging the Stock Plan as a whole and does not allege that the Stock Plan itself is inherently wasteful; instead, he is challenging awards to employees, not to the directors themselves. The Plaintiff's claim stems from the Board's choice to award one particular type of option to those non-director employees. The Defendant Directors, therefore, with respect to employee awards, are not interested in the challenged *transactions*.

*Id.* (reiterating that the directors are interested under the terms of the Stock Plan as to amounts

6

awarded by the directors to themselves). In so ruling, the Court of Chancery rejected the plaintiff's contention that the directors were interested in the transaction because they themselves were general participants in the Stock Plan, even though they received no direct benefit from awarding the time-vesting stock options to non-director employees. *Id.* at *13.

In the present matter, the causes of action set forth in the complaint are based entirely on executive compensation under the 2011 Plan and the alleged non-tax-deductibility of those executive compensation awards. (*Id.* at ¶¶ 51-70) As in *Slager*, the complaint in this action does not challenge the 2011 Plan as a whole and instead focuses solely on compensation awarded to Executives, with particular emphasis on the tax deductibility of those awards. The Directors have no financial interest in those employee awards, and as such, they are not interested in the challenged transactions for purposes of the demand futility inquiry under *Aronson*. *See Abrams v. Wainscott*, C.A. No. 11-297-RGA, 2012 WL 3614638 (D. Del. Aug. 21, 2012) (citing *Khanna v. McMinn*, 2006 WL 1388744, at *14 (Del. Ch. May 9, 2006) (demand futility analysis proceeds transaction-by-transaction)). Having determined that a majority of the Directors is not interested in executive compensation awards under the first prong of *Aronson*, the court must turn to the second prong of *Aronson*.

## B. Business Judgment Rule

If the first prong of the *Aronson* test is not satisfied, a presumption arises that the board's actions were the product of a valid exercise of business judgment. *Beam*, 845 A.2d at 1049. To satisfy the second prong, a plaintiff must plead sufficient particularized facts to "raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *In re J.P. Morgan*, 906 A.2d at 824

7

(quoting *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003)) (internal

quotations omitted). "A board's knowing and intentional decision to exceed the shareholders'

grant of express (but limited) authority raises doubt regarding whether such decision is a valid

exercise of business judgment and is sufficient to excuse a failure to make demand." *Ryan v.*

*Gifford*, 918 A.2d 341, 354 (Del. Ch. 2007). When a board does not act or refrains from acting,

the plaintiff must "create a reasonable doubt that, as of the time the complaint is filed, the board

of directors could have properly exercised its independent and disinterested business judgment in

responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993). At the motion

to dismiss stage, the court considers the well-pleaded allegations of the complaint, the documents

incorporated into the complaint by reference and judicially-noticed facts, drawing all reasonable

inferences from the complaint's allegations in favor of the plaintiff. *See Weiss v. Swanson*, 948

A.2d 433, 441 (Del. Ch. 2008); *see also White v. Panic*, 783 A.2d 543, 549 (Del. 2001).

Defendants contend that demand is not excused under either the second prong of *Aronson*

or under the *Rales* test. (D.I. 43 at 10-12) According to Defendants, when a plaintiff alleges that

a materially false statement is contained in a proxy statement, the Board's decision regarding

whether derivative litigation should be initiated is a matter of business judgment. (*Id.* at 10-11)

Even if the court were to decide otherwise, Defendants contend that Freedman still fails to

establish demand futility because the complaint does not allege with sufficient specificity: (1)

the actual misstatements or omissions constituting a violation of the Board's duty to disclose; (2)

Board involvement in preparing the disclosures allowing for personal liability; and (3)

Defendants' knowledge of false or misleading disclosures or Defendants' bad faith. (*Id.* at 12)

In response, Freedman contends that demand is excused under the second prong of *Aronson*

8

because disclosure decisions are not protected by the business judgment rule under Delaware law.  (D.I. 46 at 7)

Under Delaware law, derivative claims based on a proxy statement nondisclosure are not excused from the demand requirement under *Aronson*'s second prong.[2] *See Abrams v. Wainscott*, C.A. No. 11-297-RGA, 2012 WL3614638, at *3 (D. Del. Aug. 21, 2012) (citing *Bader v. Blankfein*, 2008 WL 5274442, at *6 (E.D.N.Y. Dec. 19, 2008) and *Freedman v. Adams*, 2012 WL 1099893, at *16 n.155 (Del. Ch. Mar. 30, 2012)).

In the present matter, Freedman fails to allege with particularity a misstatement or omission in the Proxy Statement constituting a disclosure violation. *See In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 133-34 (Del. Ch. 2009) (concluding that the complaint failed to allege with particularity "which disclosures were misleading, when the Company was obligated to make disclosures, what specifically the Company was obligated to disclose, and how the Company failed to do so" for purposes of the Rule 23.1 analysis).  The complaint alleges that the Directors did not adequately disclose the potential tax consequences of certain incentive compensation awards under the 2011 Plan, and shareholders were led to believe that compensation awards would be tax deductible under Section 162(m).  (D.I. 1 at ¶¶ 19, 52-53) However, the Proxy Statement expressly acknowledges the possibility that the compensation awards may not be tax deductible under Section 162(m).  Specifically, the Proxy Statement states that "the [Compensation Committee] may award compensation that is or may become non-

---

[2]Contrary to Freedman's contentions, this court has also held that claims for corporate waste are subject to the business judgment rule, and a claim for waste "requires pleading particularized facts to create a reasonable doubt that the board's decisions were the product of a valid exercise of business judgment to excuse demand." *Abrams*, 2012 WL 3614638, at *4 (D. Del. Aug. 21, 2012) (citing *White v. Panic*, 783 A.2d 543, 554-55 (Del. 2001)).

deductible, and expects to consider whether it believes such grants are in the best interest of the Company, balancing tax efficiency with long-term strategic objectives." (D.I. 43, Ex. A at 86) Freedman's failure to adequately plead a misstatement precludes a finding that the Board knowingly made a misleading disclosure for purposes of overcoming application of the business judgment rule.

Even if the court were to find that the complaint contains the requisite misstatement or omission, Freedman has not alleged that the Directors made a knowing and intentional decision to violate the terms of the 2011 Plan, and the complaint contains no factual particularity regarding the Directors' knowledge or intent. Therefore, Freedman has failed to raise a reasonable doubt that the Directors acted with a good faith belief that they were acting in the Company's best interests and within the discretionary authority granted to them by the 2011 Plan. This court has rejected the notion that "a shareholder need only allege violation of a compensation agreement to excuse demand, without additional allegations of knowledge and intent." *See Freedman v. Redstone*, C.A. No. 12-1052-SLR, 2013 WL 3753426, at *9 (D. Del. July 16, 2013); *Abrams*, 2012 WL3614638, at *3 (citing *Weiss v. Swanson*, 948 A.2d 433, 441-42 (Del. Ch. 2008)). Rather, Delaware courts have held that a complaint that fails to plead specific factual allegations addressing the state of mind inquiry does not meet the strict pleading requirements of Rule 23.1. *See In re Citigroup*, 964 A.2d at 134-35. Nothing in Freedman's complaint suggests that the Directors were aware of the alleged misstatements and omissions, or that they acted in bad faith by not adequately informing themselves. For these reasons, Freedman fails to satisfy the demand requirement under the second prong of *Aronson*. I recommend that the court grant the motion to dismiss pursuant to Rule 23.1, and the court need not address

10

defendants' arguments for dismissal of the action under Rule 12(b)(6).

## V.    CONCLUSION

For the foregoing reasons, I recommend that the court grant the motion to dismiss.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10)

pages each.

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

www.ded.uscourts.gov.

Dated: March 12 , 2014

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

11